VILLANTI, Judge.
Jeffrey Fritz (the Husband) seeks review of the Order for Division of Military *426 Retirement Pay (MPO) entered as part of the dissolution of his marriage to Terri Fritz (the Wife). Because the MPO does not accurately reflect the oral agreement of the parties concerning the distribution of the Husband’s military pension and because it incorporates a legally improper coverture fraction, we reverse and remand for further proceedings.
The Husband, who is an active-duty military officer, filed a petition to dissolve his marriage to the Wife in 2011. The Wife filed a counterpetition in which she sought equitable distribution of the marital assets, including the division of “retirement accounts.” Late in the afternoon of the day before the dissolution hearing, the parties reached a settlement agreement as to all of the issues between them. Hence, during the time originally scheduled for the dissolution hearing, the parties orally presented the terms of their settlement agreement to the court.
The parties first set out their agreement concerning the parenting plan. Then they moved on to their agreement concerning the equitable distribution of the marital assets and liabilities. As to the Husband’s military pension, counsel for the Wife announced that the parties had agreed to equally divide the marital portion and that the Wife’s “marital portion of the pension is 48.12 percent.” Counsel for the Husband immediately interrupted and stated, “All I can agree to and all I have agreed to is that the pension is going to be divided evenly, the portion that accrued during the marriage.” When counsel for the Wife asked, whether counsel for the Husband had already determined the coverture fraction necessary to calculate the exact amount of the Wife’s share, counsel for the Husband responded, “No. I leave that to the experts.”
After further discussion of the equitable distribution scheme, counsel for the Wife returned to the issue of the division of the Husband’s pension, reiterated that the parties’ intent was to evenly split the marital portion of the Husband’s pension, and said “as I said, it’s 48 point something percent of the total pension.” Counsel for the Husband again interrupted and stated, “I’m not sure if we are in agreement that it’s 48 percent. If that’s what it is, if you’ve done the calculations, I’d rather give it to Voit, the expert, to figure out what the marital portion of the pension is.” Counsel for the Wife then stated that there was no need to hire an expert because the parties could determine the cov-erture fraction themselves and that it should be the number of months of marriage over the number of months of the Husband’s creditable military service as of the date of filing the petition, which counsel for the Wife asserted should be 211 months over 219 months. Counsel for the Wife asserted that the resulting fraction would then be applied to the Husband’s pension payments upon his retirement and then multiplied by fifty percent to establish the Wife’s share.
The court seemed to recognize that this explanation of the coverture fraction was incorrect. It explained:
No, no, I understand that, but when you put it in a[MPO], okay, you’re going to have to say 50 percent of whatever is accrued between this time period and they will then figure it out when it starts to be distributed.
I don’t know how you can figure .right now that it’s 47[sic] point something percent of the total pension because it’s not going to be 47[sic] percent of the total pension, ... because he is going to work and he has worked since the date of filing.
When counsel for the Wife continued to discuss how he intended to calculate and apply the fraction, the court summarized *427 its understanding that “everybody is agreeing to 50 percent of what was accrued from date of going in to date of filing.” Both attorneys stated that that was correct, and they agreed that forensic accountant Mr. Voit would prepare the MPO. Both the Husband and the Wife also agreed under oath at the hearing that the attorneys’ oral statements encapsulated their agreement.
Despite this apparent agreement on the division of the Husband’s pension, the parties could not agree on the proper language to be included in the MPO to effectuate the agreement. When the court learned of the parties’ dispute over the proper language, it scheduled a hearing on the matter. At that hearing, the Husband argued that the MPO drafted by the Wife did not comport with the parties’ agreement.[1] Specifically, he pointed out that the proposed MPO provided that the cov-erture fraction would be calculated based on the number of months of marriage divided by the Husband’s “total number of months of creditable military service at retirement,” which would improperly allow the Wife to share in the Husband’s postfil-ing earnings. Despite the Wife’s agreement at the original hearing that the denominator of the coverture fraction should be the Husband’s total months of creditable military service as of the date of filing, she now argued that the denominator could not be determined until the Husband retired and so it was “an unknown number.”
The Husband repeatedly objected that the language in the MPO drafted by the Wife’s counsel did not accurately reflect the parties’ agreement as shown by the transcript of the earlier hearing. In response, the Wife argued that the order did comport with the parties’ agreement and that the Husband was just unhappy with that agreement. It is clear from the record that the trial court became frustrated with the parties’ disagreement over whether the proposed MPO actually reflected the substance of their previous agreement, and the court refused to hear any testimony from Mr. Voit — who was present— about whether the coverture fraction included in the Wife’s proposed MPO was correctly determined. Ultimately, the trial court signed the Wife’s proposed MPO over the Husband’s objections.
In this appeal, the Husband raises two separate issues. First, he argues that the MPO does not accurately reflect the parties’ agreement because it contains terms in addition to those orally agreed upon. Second, he argues that the coverture fraction included in the MPO conflicts with the parties’ agreement and is legally incorrect. We agree on both points.
“[A]n oral agreement that is announced to the trial court is considered a fully enforceable settlement agreement.” Morange v. Morange, 722 So.2d 918, 920 (Fla. 2d DCA 1998); see also Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So.2d 669, 673 (Fla. 1st DCA 1997). However, to be enforceable, the settlement agreement must be mutually agreeable on every essential element. Morange, 722 So.2d at 920; Long Term Mgmt., 704 So.2d at 673. And the party seeking to enforce the agreement has the burden to establish mutual reciprocal assent to each and every term. Morange, 722 So.2d at 920.
The only agreement clear on the face of the transcript of the original hearing is that the Wife would receive one half of the *428 portion of the Husband’s pension that was earned during the course of the marriage. However, three paragraphs of the MPO provide for additional pension payments to the Wife:
• Paragraph 9 provides that the Wife is to receive a proportionate share of any post-retirement cost of living adjustments made to the Husband’s retirement benefits.
• Paragraph 18 provides that the Wife will receive a “pro rata” share of any retroactive payments the Husband receives if he elects not to retire at his normal retirement date.
• Paragraph 19 provides that the Wife will receive a “pro rata” share of “any sum taken by [the Husband] in lieu of or in addition to the [Husband]’s disposable retired pay, including, but not limited to, exit bonuses, voluntary separation incentive pay (VSI), special separation benefit (SSB), or any other form of retirement benefits attributable to separation from military service.”
None of these terms were part of the oral agreement read into the record at the first hearing. And while the Wife characterizes these paragraphs as “necessary boilerplate,” it is clear by their plain terms that they give the Wife more than her one-half share of the Husband’s pension earned during the term of the marriage. They also give her a share of postdissolution cost of living increases, a share of postdissolution retroactive pay earned if the Husband elects to remain in the military past his anticipated retirement date, and a share of postdissolution bonuses and incentive benefits earned by the Husband. Because the benefits awarded to the Wife in these paragraphs are not benefits that were earned by the Husband during the term of the marriage, they were clearly not part of the parties’ agreement and they were not properly included in the MPO.
In addition to including these new terms, the MPO also fails to include the parties’ agreement concerning the division of the Survivor Benefit Plan (SBP) premium. At the original hearing, counsel for the Wife announced that the parties had agreed that the Husband would take the steps necessary for the SBP to provide the Wife with a payment of $2200 per month for life should the Husband predecease her. Counsel for the Wife also announced that the parties had agreed to evenly split the premium for this benefit. However, while the MPO provides that the Husband will make the necessary SBP election to provide the Wife with this benefit, the MPO does not include the parties’ agreement to evenly share the premium cost. Because this provision was omitted, the MPO does not accurately reflect the parties’ oral settlement agreement concerning this benefit. All of these facial deficiencies — both additions and omissions — require that the MPO be reversed.
As an additional basis for reversal, the Husband contends that the MPO contains a legally improper coverture fraction and applies it in an improper manner. The Husband is correct on this point as well. This court has explained the proper calculation of the marital portion of a retirement account:
To determine the amount of a retirement or pension fund accumulated during the marriage, the trial court “creat[es] a fraction where the numerator is the amount of time the employee was married while participating in the plan, and the denominator is the total time the employee’ has in the plan.” Trant v. Trant, 545 So.2d 428, 429 (Fla. 2d DCA 1989) (emphasis added). The trial court then multiplies the plan’s present value by the coverture fraction *429 to calculate the total present value of the retirement fund which accrued during the marriage. Id.
Horton v. Horton, 62 So.3d 689, 691 (Fla. 2d DCA 2011) (italic emphasis in original; underline emphasis added). Thus, the calculation is based on the former spouse’s present time in the retirement plan and the present value of the retirement benefit — not the value of the pension at some point in the future when the former spouse actually retires.
The Wife takes issue with this calculation, arguing that the Husband agreed to a “deferred distribution method” and thus the coverture fraction cannot be applied until the Husband actually retires. Initially, we note that this argument is not in any way supported by the transcript of the hearing at which the terms of the parties’ agreement were announced. More importantly, however, the coverture fraction contained in the MPO does not comport with what is required under the deferred distribution method. Under that method:
the court determines what the employee’s benefit would be if he retired on the date of the final hearing without any early retirement penalty. The court then multiplies this dollar amount by the percentage to which the other spouse is entitled. This method yields a fixed dollar amount which the awarded spouse receives from each of the employee’s pension payments after retirement.
Trant v. Trant, 545 So.2d 428, 429 (Fla. 2d DCA 1989) (emphasis added). Hence, the calculation is performed based on the pension-holder’s present time in the retirement plan and the present value of that plan.
Here, however, the calculation included in the MPO prepared by the Wife does not assume retirement on the date of the final hearing as agreed upon and does not use the present value of the Husband’s pension to determine a fixed dollar amount to which the Wife will be entitled. Instead, the denominator used in the Wife’s cover-ture fraction is the Husband’s “total number of months of creditable military service at retirement.” The MPO then applies this improper coverture fraction to the value of the Husband’s pension plan on the date of his retirement. This fraction and its application allows the Wife to receive payments based, at least in part, on pension benefits earned by the Husband after dissolution, a result not supported by the parties’ oral agreement. Further, this type of coverture fraction and its application were explicitly rejected by the supreme court in Boyett v. Boyett, 703 So.2d 451, 452 (Fla.1997), because its application improperly awards the receiving spouse a portion of all benefits earned postdissolution. See also Lawrence v. Lawrence, 904 So.2d 445, 446 (Fla. 3d DCA 2005) (holding that an MPO that defined the coverture fraction as having a numerator of the months of marriage during the husband’s creditable military service and a denominator of the husband’s “total number of months of creditable military service” improperly allowed the wife to benefit from contributions, work, and benefits made and earned after dissolution). Hence, because the MPO calculates the Wife’s portion of the Husband’s pension in a manner both different from what the parties agreed to and contrary to Florida law, it must be reversed.
In sum, the MPO entered by the trial court contains provisions not agreed to by the parties, omits a term to which the parties specifically agreed, and utilizes a legally improper coverture fraction that will result in the Wife receiving a portion of the pension benefits earned by the Husband postdissolution. Therefore, we reverse the MPO and remand for further proceedings. On remand, the trial court *430 must enter a new MPO that includes the terms — and only the terms — reflected by the parties’ oral agreement and that contains the provisions necessary to properly determine and apply the correct coverture fraction. And while we agree with the Wife that an expert accountant may not be necessary to calculate the Wife’s share of the pension using the proper formula, the trial court may, in its discretion, take any additional evidence it deems necessary on remand to ensure that the MPO effectuates the parties’ agreement.
Reversed and remanded for further proceedings.
SILBERMAN and SLEET, JJ., Concur.

. While the parties had originally agreed to use Mr. Voit to prepare the MPO, it is apparent from the transcript of this second hearing that the Wife unilaterally elected to prepare and submit a proposed MPO drafted by someone other than Mr. Voit.